UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ORLANDO BELL,

    Petitioner,

v.                                                  Case No. 8:04-cv-2269-T-23TGW

JAMES V. CROSBY,

    Respondent.
_____/

## **ORDER**

Bell petitions for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) and challenges the validity of his conviction for second degree murder, for which he is serving thirty years. Numerous exhibits ("Respondent's Exhibit __") support the response (Doc. 9). The respondent admits the petition's timeliness (Response at n.2, Doc. 9).

## **FACTS**[1]

In July, 1998, Bell visited a Tampa bar with friends. Taaj McNutt, the victim, visited the same bar. Shortly after 2:00 a.m., McNutt, who was 5'10" and weighed 202 pounds, attacked Bell, who was 5'3" and weighed 130 pounds. Bar personnel, including one of the owners and an off-duty police officer, interrupted the fight and separated McNutt from Bell, but McNutt "broke loose" and resumed punching Bell. The owner again grabbed McNutt and separated him from Bell, who drew a gun, jumped up to get a

---

[1] This summary of the facts derives from Bell's brief on direct appeal (Respondent's Exhibit 2).

clear shot over the owner, and shot downward into McNutt. The "bullet went from the rear of McNutt's body towards the front only 10 degrees off absolute vertical" and "went through the heart and major artery." Bell fled the bar.

Four months later Tampa police presented a set of photographs to the bar's disc jockey, who identified Bell's photograph as depicting the shooter. While watching a St. Petersburg home owned by a friend of Bell, police observed a car with two occupants leave the residence. Police stopped the car, and the passenger identified himself as Darron Jerome Edwards. At the residence, police found a driver's license issued to "Darron Jerome Edwards" but containing Bell's picture. St. Peterburg police alerted Tampa police that Bell was in custody. In an interview with a Tampa detective, Bell admitted his involvement in the bar incident but claimed that he only hit McNutt in the head with the gun; Bell denied shooting McNutt.

## STANDARD OF REVIEW

Because this action commenced after April 24, 1996, Section 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), governs this proceeding. Wilcox v. Florida Dep't of Corrections, 158 F.3d 1209, 1210 (11th Cir. 1998), cert. denied, 531 U.S. 840 (2000). Section 2254(d), which creates a highly deferential standard for federal court review of state court adjudications, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied--the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." <u>Bell v. Cone</u>, 535 U.S. 685, 694 (2002); <u>Brown v. Head</u>, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness <u>per se</u>, of the state court decision that we are to decide.").

The state appellate court affirmed (Respondent's Exhibit 7) Bell's conviction on direct appeal in a <u>per curiam</u> decision without a written opinion, and likewise affirmed (Respondent's Exhibit 13) the denial of his subsequent Rule 3.850 motion for

- 3 -

post-conviction relief.  The state appellate court's per curiam affirmances warrant deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due."  Wright v. Moore, 278 F.3d 1245, 1254 (11th Cir.), reh'g and reh'g en banc denied, 278 F.3d 1245 (2002), cert. denied sub nom Wright v. Crosby, 538 U.S. 906 (2003).

Bell bears the burden of overcoming a state court factual determination by clear and convincing evidence.  "[A] determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  This presumption of correctness applies only to a finding of fact, not a mixed determination of law and fact.  Parker v. Head, 244 F.3d 831, 836 (11th Cir.), cert. denied, 534 U.S. 1046 (2001).  Consequently, this court must defer to the finding of fact in the state court's rejection of Bell's post-conviction claims (Order Denying Motion for Post-Conviction Relief, Respondent's Exhibit 10 Vol. II at 167-75).

Bell must prove that the state court's decision was "(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

Ground One:

Bell alleges that the trial court erred in instructing the jury on the lesser included offense of manslaughter by culpable negligence.  Bell was charged with second degree murder for the shooting of McNutt.  The jury instructions included both manslaughter by

- 4 -

intentional act and manslaughter by culpable negligence.  The jury rejected both manslaughter alternatives and convicted Bell of second degree murder as charged.  Bell challenges only the trial court's instructing the jury on manslaughter by culpable negligence; Bell asserts no challenge to the trial court's instructing the jury on manslaughter by intentional act.

Federal review of this state law issue is very limited.  "Questions of state law rarely raise issues of federal constitutional significance, because a state's interpretation of its own laws provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved."  Tejada v. Dugger, 941 F.2d 1551, 1560 (11th Cir. 1991) (citation omitted), cert. denied, 502 U.S. 1105 (1992).  Federal habeas corpus review is especially limited when reviewing the propriety of jury instructions from a state trial.  Agan v. Vaughn, 119 F.3d 1538, 1545 (11th Cir. 1997) ("Our limited role on habeas review, when faced with a challenge to a state law jury charge, is to determine whether any error or omission in the jury charge was so prejudicial as to amount to a violation of due process."), cert. denied, 523 U.S. 1023 (1998).  A habeas petitioner must show that the error caused a fundamentally unfair trial.

> An error in instructing the jury cannot constitute a basis for habeas relief unless the error "so infected the entire trial that the resulting conviction violates due process." Henderson v. Kibbe, 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977); Futch v. Dugger, 874 F.2d 1483, 1488 (11th Cir.1989).  It is not sufficient that the instruction was "undesirable, erroneous, or even universally condemned." Henderson v. Kibbe, 431 U.S. at 154, 97 S.Ct. at 1736 (quoting Cupp v. Naughten, 414 U.S. 141, 146, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973)).

Jacobs v. Singletary, 952 F.2d 1282, 1290 (11th Cir. 1992).  Bell fails to show that his trial was fundamentally unfair because of the lesser included instruction of manslaughter

- 5 -

by culpable negligence. Consequently, this state law issue is not subject to federal habeas corpus review.

Ground Two:

Bell alleges that the trial court's allowing the introduction of prejudicial evidence denied him a fair trial and violated his right to due process. He cites four specific examples: (a) his use of an alias ("Darron Jerome Edwards") when arrested, (b) his possessing a driver's license issued to a "Darron Jerome Edwards," (c) his use of marijuana, and (d) the presence of firearms in his home. Bell's claim lacks merit.

The admissibility of evidence in a state trial is largely a matter for the state to decide without federal intervention. See McCullough v. Singletary, 967 F.2d 530, 535-36 (11th Cir. 1992) ("A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved."), cert. denied, 507 U.S. 975 (1993), and Marshall v. Lonberger, 459 U.S. 422, 438, n.6 (1983) ("[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules."). Federal review is available only in extreme circumstances. "[I]t is normally 'within the power of the State to regulate procedures under which its laws are carried out,' and its decision in this regard is not subject to proscription under the Due Process Clause unless 'it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" Patterson v. New York, 432 U.S. 197, 201-202 (1977). Bell has not shown that the evidence caused a fundamentally unfair trial.

Additionally, the respondent correctly argues that, during the state trial, Bell failed to properly preserve this ground as a federal claim.

Ground Three:

Bell asserts three claims of ineffective assistance of counsel. The second claim is procedurally barred. Bell alleges that "counsel mislead the jury panel during opening and closing arguments on the applicable law." He raised this claim in his state Rule 3.850 motion for post-conviction relief. The state court rejected this claim in a written order (Respondent's Exhibit 10 Vol. II at 171) following an evidentiary hearing. Because Bell received an evidentiary hearing and he failed to include this claim in his appellate brief (Respondent's Exhibit 11), Bell failed to "fairly present" this claim to the state courts. Cortes v. Gladish, 216 Fed.Appx. 897, 899-900 (11th Cir. 2007) ("[H]ad Cortes received an evidentiary hearing, his failure to address issues in his appellate brief would constitute a waiver."); Duest v. Dugger, 555 So.2d 849, 851-52 (Fla. 1990) ("Duest also seeks to raise eleven other claims by simply referring to arguments presented in his motion for postconviction relief. The purpose of an appellate brief is to present arguments in support of the points on appeal. Merely making reference to arguments below without further elucidation does not suffice to preserve issues, and these claims are deemed to have been waived."). As a consequence, this claim is unexhausted.

A petitioner must present each claim to the state courts before raising the claim in federal court. "[E]xhaustion of state remedies requires that petitioners 'fairly presen[t]' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365 (1995), quoting Picard v. Connor, 404 U.S. 270, 275 (1971). Accord Rose v. Lundy, 455 U.S. 509, 518-19 (1982) ("A rigorously enforced total exhaustion rule will encourage state prisoners to seek full relief first from the state courts, thus giving those

- 7 -

courts the first opportunity to review all claims of constitutional error."), and Upshaw v. Singletary, 70 F.3d 576, 578 (11th Cir. 1995) ("[T]he applicant must have fairly apprised the highest court of his state with the appropriate jurisdiction of the federal rights which allegedly were violated."). Bell was required to raise this claim on the appeal from the denial of his motion for post-conviction relief. Upshaw v. Singletary, 70 F.3d at 579 ("In Florida, in non-death penalty cases, the applicant must have apprised a district court of appeal.").

The two remaining claims of ineffective assistance of counsel are properly presented. A claim of ineffective assistance of counsel is a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994)). Strickland v. Washington, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to Strickland, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Strickland, 466 U.S. at 687, 104 S.Ct. 2052.

Sims v. Singletary, 155 F.3d 1297, 1305 (11th Cir. 1998).

Strickland requires proof of both deficient performance and consequent prejudice. Strickland v. Washington, 466 U.S. at 697 ("There is no reason for a court deciding an

ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); Sims v. Singletary, 155 F.3d at 1305 ("When applying Strickland, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland v. Washington, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland v. Washington, 466 U.S. at 690. Strickland requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland v. Washington, 466 U.S. at 690.

Because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment," Bell must demonstrate that error by counsel prejudiced the defense. Strickland v. Washington, 466 U.S. at 691-92. To meet this burden, Bell must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland v. Washington, 466 U.S. at 694.

Strickland cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."

Strickland v. Washington, 466 U.S. at 690-91. Bell cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful:

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

White v. Singletary, 972 F.2d 1218, 1220-21 (11th Cir. 1992). Accord Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.' ") (en banc) (quoting Burger v. Kemp, 483 U.S. 776, 794 (1987)). See also Jones v. Barnes, 463 U.S. 745, 751 (1983) (counsel has no duty to raise frivolous claims).

Bell presents the same three claims of ineffective assistance of counsel he presented the state court in his Rule 3.850 motion for post-conviction relief, claims which the state court characterized as follows (Respondent's Exhibit 10 Vol. II at 167-68):

> 1. Ineffective assistance of counsel due to counsel's erroneous advice to Defendant that his only available defense was self defense, a defense Defendant did not wish to pursue.
>
> 2b. Ineffective assistance of counsel whereby counsel erred in pursuing the defense of self defense.

The state court then recognized that Strickland controls Bell's claims of ineffective assistance of counsel (Respondent's Exhibit 10 Vol. II at 168-69).

> In grounds 1 . . . and 2b, Defendant claims ineffective assistance of counsel. When ineffective assistance is alleged, the burden is on the person seeking collateral relief to specifically allege the grounds for relief

- 10 -

> and to establish whether the grounds resulted in prejudice. Effective
> assistance of counsel does not mean that a defendant must be afforded
> errorless counsel or that future developments in law must be anticipated.
> Meeks v. State, 382 So.2d 673 (Fla. 1980). In Strickland v. Washington,
> 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the U.S. Supreme
> Court provided the following standard for determining ineffective assistance
> of counsel:
>
>> The benchmark for judging any claim of ineffectiveness must
>> be whether counsel's conduct so undermined the proper
>> functioning of the adversarial process that the trial cannot be
>> relied on as having produced a just result.  A convicted
>> defendant's claim that counsel's assistance was so defective
>> as to require reversal of a conviction . . . has two components.
>> First, the defendant must show that counsel's performance
>> was deficient.  This requires showing that counsel made errors
>> so serious that counsel was not functioning as the "counsel"
>> guaranteed the defendant by the Sixth Amendment.  Second,
>> the defendant must show that the deficient performance
>> prejudiced the defense.  This requires showing the errors were
>> so serious as to deprive the defendant of a fair trial, a trial
>> whose result is reliable . . . .  [T]he proper standard for
>> attorney performance is of reasonably effective assistance.
>
> 466 U.S. at 686-687. In Downs v. State, 453 So.2d 1102 (Fla. 1984), the
> Florida Supreme Court stated that the defendant must affirmatively prove
> prejudice.  The test for prejudice is:
>
>> [T]hat there is a reasonable probability that, but for counsel's
>> unprofessional errors, the result of the proceeding would
>> have been different.  A reasonable probability is a probability
>> sufficient to undermine confidence in the outcome.
>
> Strickland, 466 U.S. at 694.

Because the state court correctly recognized that Strickland governs Bell's ineffective assistance of counsel claims, Bell cannot meet the "contrary to" test in Section 2254(d)(1). Bell recognizes that the state court applied the correct legal precedent, but contends that the state court unreasonably applied Strickland (Petition at 5, Doc. 1).

- 11 -

The state court conducted an evidentiary hearing and rejected each claim of ineffective assistance of counsel. The state court wrote (Respondent's Exhibit 10 Vol. II at 169-74) (court's record citations omitted):

> In ground 1, Defendant claims ineffective assistance of counsel due to counsel's erroneous advice to Defendant that his only available defense was self defense, a defense Defendant did not wish to pursue. Specifically, Defendant claims that counsel failed to inform him of the duty to retreat which is an essential part of the affirmative defense of self defense. A review of the October 3, 2002, hearing transcript reflects that Mr. Harvey Hyman, Defendant's trial counsel, testified that he advised Defendant prior to trial of the following:
>
>> The only other option that I saw was a defense of justified use of deadly force or nondeadly force, depending on whether or not certain facts could be developed at trial to support the fact that the firearm was not used in a manner likely to cause death or great bodily harm.
>
> Therefore, Mr. Hyman informed Defendant prior to trial that the trial strategy was going to be self defense. Moreover, on October 3, 2002, Defendant did not testify that he ever told his counsel that he did not wish to pursue the affirmative defense of self defense. Furthermore, Defendant never testified that there was another viable defense that existed or that he requested counsel to pursue another defense at trial.
>
> Additionally, at trial, Defendant's counsel argued that the State did not prove its case, requested that the jury accept that this was a case of excusable homicide, and then proceeded to argue self defense. Therefore, in addition to self defense, Defendant's counsel argued manslaughter as an option for the jury to consider. Lastly, at sentencing, Defendant made a statement to the Court whereby Defendant made it quite clear that he thought he had no place to go. After reviewing this portion of ground 1, the testimony and evidence presented on October 3, 2002, the arguments of both counsel, the court file, and the record, the Court finds that Defendant has failed to meet the first prong of Strickland in that he has failed to prove that counsel's advice to Defendant that he pursue a self defense strategy at trial was erroneous. Moreover, Defendant has failed to prove that he ever expressed to his counsel, either before trial or during trial, that he did not wish to pursue the affirmative defense of self defense. Since Defendant has failed to meet the first prong of Strickland, it is unnecessary to address the prejudice component. See Downs v. State, 740 So.2d 506,

518 n. 19 (Fla. 1999). As such, no relief is warranted upon this portion of ground 1.

With respect to counsel's failure to inform Defendant of the duty to retreat, on October 3, 2002, Mr. Hyman testified that although he does not remember using the words "duty to retreat" in his conversations with Defendant, he does remember explaining to Defendant what self defense was and what had to be established at trial. After reviewing this portion of ground 1, the testimony and evidence presented on October 3, 2002, the arguments of both counsel, the court file, and the record, the Court finds that counsel did listen to Defendant's version of the events, and taking that version into consideration, and without using the words "duty to retreat," counsel made it very clear to Defendant that trial strategy was going to be to present facts that would give the jury the impression that Defendant had no way out. Consequently, Defendant has failed to meet the second prong of Strickland in that he has failed to prove how counsel's alleged failure to use the words "duty to retreat" when explaining the requirements that need to be established when asserting the affirmative defense of self defense resulted in prejudice. Since Defendant has failed to meet the second prong of Strickland, it is unnecessary to address the performance component. See Kennedy v. State, 547 So.2d 912, 914 (Fla. 1989). As such, no relief is warranted upon this portion of ground 1.

. . .

In ground 2b, Defendant claims ineffective assistance of counsel whereby counsel erred in pursuing the defense of self defense. Specifically, Defendant claims that counsel should not have pursued the defense of self defense knowing that under the law, Defendant had a duty to retreat and failed to do so. Defendant further claims that without his trial testimony that he was unable to retreat, the jury could not find that Defendant acted in self defense. However, as previously discussed in ground 1 above, counsel did listen to Defendant's version of the events, and taking that version into consideration, and without using the words "duty to retreat," counsel made it very clear to Defendant that trial strategy was going to be to present facts that would give the jury the impression that Defendant had no way out.

Moreover, on October 3, 2002, Defendant testified that he understood that he had a constitutional right to testify if he wanted to. Defendant further testified that Mr. Hyman advised him that it would be in his best interest not to take the stand. However, at trial, the Court inquired of Defendant as follows:

| | |
|---|---|
| COURT: | Mr. Bell, your attorney indicates to me that you do not wish to testify in this matter; is that correct? |
| DEFENDANT: | Yes, sir. |
| COURT: | You understand, sir, that you have the absolute constitutional right to testify if you wish to; you understand that? |
| DEFENDANT: | Yes, sir. |
| COURT: | You also understand you have the absolute constitutional right not to testify if you don't want to; do you understand that? |
| DEFENDANT: | Yes, sir. |
| COURT: | Have you consulted with you attorney concerning your options in this case? |
| DEFENDANT: | Yes, sir, he said it would be in my best interest not to. |
| COURT: | Well maybe he says it would be in your best interest but what do you want to do? |
| DEFENDANT: | No. |
| COURT: | You don't want to testify? |
| DEFENDANT: | I'll go with his opinion, sir. |
| COURT: | But no one has forced you into that decision, correct? |
| DEFENDANT: | No, sir. |
| COURT: | You understand that if you want to testify you have every right to testify; do you understand that? |
| DEFENDANT: | Yes, sir. |

| | |
|---|---|
| COURT: | Do you need any more time to discuss it with your attorney? |
| DEFENDANT: | No, sir. |
| COURT: | You sure of that? |
| DEFENDANT: | Positive. |
| COURT: | You sure you don't want to testify? |
| DEFENDANT: | Yes, sir. |
| COURT: | Do you have any questions about that? |
| DEFENDANT: | No, sir. |

Therefore, although Defendant informed the Court that his counsel advised him that it would be in his best interest not to testify, the Court repeatedly inquired of Defendant whether it was his decision not to testify irregardless of counsel's recommendation that he not testify, and Defendant assured the Court that it was his decision.

Moreover, Mr. Hyman testified that he advised Defendant that it would be in his best interest not to testify based on the fact that Defendant had given a recorded statement to the police. Furthermore, at trial, Defendant's counsel argued that the State did not prove its case, requested that the jury accept that this was a case of excusable homicide, and then went on to argue self defense. Therefore, in addition to self defense, Defendant's counsel argued manslaughter as an option for the jury to consider. Lastly, at sentencing, Defendant made a statement to the Court whereby Defendant made it quite clear that he thought he had no place to go. After reviewing the testimony and evidence presented on October 3, 2002, the court file, and the record, the Court finds that although counsel did make a recommendation to Defendant not to take the stand, it was Defendant's decision not to take the stand. Consequently, Defendant has failed to meet the first prong of Strickland in that he has failed to prove that counsel acted deficiently in pursing the affirmative defense of self defense at trial and advising Defendant not to take the stand. Since Defendant has failed to meet the first prong of Strickland, it is unnecessary to address the prejudice component. See Downs v. State, 740 So.2d 506, 518 n. 19 (Fla. 1999). As such, no relief is warranted upon ground 2b.

Condensed to its essence, Bell claims that trial counsel rendered ineffective assistance by failing to fully inform Bell about the elements necessary to prove self defense, specifically regarding the duty to retreat, and this failure caused Bell to reject the state's offer for a seventeen-year sentence if Bell plead guilty. Accordingly, two key issues appear: trial counsel's explanation of self defense and the likelihood that Bell would accept a seventeen-year sentence. The state court rejected the substance of Bell's claim based on the credibility of Bell and trial counsel. At the conclusion of the evidentiary hearing, the state court recorded the following credibility determinations and findings.

> I'm going to make these findings and then see where we go. I don't believe for one minute that Mr. Hyman said that 17 years is too much for manslaughter, they had a good chance if he went to trial. I don't believe that. I do believe that Mr. Hyman said that it was in Mr. Bell's best interest not to take the stand, but I don't believe that Mr. Hyman gave this defendant no reason. I do believe that Mr. Hyman, as he indicated here, probably made it very clear how dangerous it was, potentially, for Mr. Bell to take the witness stand, because Mr. Bell would be cross-examined, and vigorously, regarding his prior statement and for the other reasons that Mr. Hyman indicated today. So we have a problem right from the get-go as far as Mr. Bell is concerned. His credibility has been undermined, at least from what I see in terms of what Mr. Hyman has indicated to the court.
>
> . . .
>
> There's nothing in this record that substantiates anything that Mr. Bell has indicated. I do believe that Mr. Hyman didn't use the magic words "duty to retreat;" but I do believe that he very clearly listened to what the defendant's version of the events were, took that version of events into consideration and made it clear along the way, without using "duty to retreat," that the defen[se], basically, was going to present facts that indicated the defendant had no way out. So I don't think that his failure to use "duty to retreat" is in any way anything that would point to his being ineffective.
>
> Now, I think I've covered his "made a decision not to testify," and in terms of his refusing to take the offer, I don't think that there's anything in this

- 16 -

> record that's credible that would suggest that it was anybody's decision but this defendant's decision not to take the offer. He, according to Mr. Hyman, wasn't prepared to take anything more than six years or a suspended sentence. I believe that; I believe that's exactly what occurred. Now in hindsight, 17 years looks good, and I think that's exactly what's occurring at this juncture and that's unfortunate. Hindsight is always — always difficult.

Respondent's Exhibit 10 Vol. II at 273-76. A state court's credibility determination is a finding of fact that carries a presumption of correctness, a presumption overcome only with clear and convincing evidence. Bottoson v. Moore, 234 F.3d 526, 534 (11th Cir. 2000), cert. denied, 534 U.S. 956 (2001). See 28 U.S.C. § 2254(e)(1). Although Bell may disagree with the state court's credibility determinations, his difference of opinion is not "clear and convincing evidence." The state court's determinations were neither contrary to or an unreasonable application of controlling Supreme Court precedent nor an unreasonable determination of the facts.

Accordingly, Bell's petition for the writ of habeas corpus (Doc. 1) is **DENIED**. The clerk shall enter a judgment against Bell and close this action.

ORDERED in Tampa, Florida, on April 16, 2008.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE